No. 21,527.

THE STATE OF KANSAS, ex rel. James H. Luscombe, as County Attorney, etc., *Appellant,* v. THE CITY OF KANSAS CITY et al., *Appellees.*

SYLLABUS BY THE COURT.

CITIES—*First Class—Statutory Limit of Bonded Indebtedness—Waterworks Bonds Included.* Waterworks bonds issued under the authority of chapter 33 of the Laws of 1908 constitute bonded indebtedness of the city, within the meaning of section 6 of chapter 62 of the Laws of 1909, which prohibits cities of the first class having a population of 50,000 or more from issuing bonds in excess of five per cent of the assessed valuation of the taxable property of the city, and it is held herein that the bonded indebtedness of the defendant exceeds the limitation fixed by the statute, and that the proposed issue of additional bonds is without authority.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed November 10, 1917. Reversed.

*James H. Luscombe,* of Kansas City, for the appellant.

*H. J. Smith, T. M. Van Cleave,* and *Lee Judy,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to enjoin the issuance of $125,000 worth of bonds by the city of Kansas City for the building of an addition to the city hall. The trial was had upon an agreed statement of facts, and from the judgment in defendant's favor plaintiff appeals.

The action was brought upon the ground that the proposed bonds would cause the city's indebtedness for general improvements to exceed the statutory limit. The limit is prescribed in section 1 of chapter 126 of the Laws of 1903, as amended by section 6 of chapter 62 of the Laws of 1909. The section reads:

"At no time shall the bonded indebtedness of any city of the first class having a population of fifty thousand or more, except for bonds issued for special improvements and for sewers, for which a special tax is levied upon the property improved, exceed five per cent of the assessed value of all the taxable property within said city, as shown by the assessment books of the previous year; and at no time shall the bonded indebtedness of any city of the first class having a population of fifty thousand or more, including bonds issued for special improvements, for which a special tax is levied upon the property improved, exceed ten per cent of the assessed value of all the taxable property within said city, as shown by the assessment books of the previous year: *Provided further*, That nothing in this act shall be construed to impair or invalidate any bonds already issued, whether for general purposes or for special improvements, or bonds to pay for improvements already legally petitioned for." (Gen. Stat. 1915, § 1422.)

The defendant is a city of the first class having a population of more than 50,000. The assessed valuation of the taxable property for the year 1916 is $93,730,145. Five per cent of that sum is $4,686,507.25. The total bonded indebtedness of the defendant, exclusive of special-improvement bonds, already amounts to $5,547,064, an amount considerably in excess of the statutory limit. In this total is included $2,177,000 worth of waterworks bonds issued under the provisions of chapter 33 of the Laws of 1908. Section 16 of this act reads as follows:

"None of the restrictions and limitations respecting the amount of city indebtedness contained in any of the statutes of the state of Kansas shall apply to or in any way affect the issuance of the bonds authorized by this act." (Gen. Stat. 1915, § 1312.)

The indebtedness also includes bonds to the amount of $881,-

500 issued for an electric-light plant, and which it is said were issued under a like limitation.

The city contends that under the provisions quoted relating to limitations the waterworks bonds are not to be counted as a part of the bonded indebtedness of the city, in the issuance of bonds for other purposes. If they were left out of consideration, the proposed issue would be well within the five-per-cent limit provided in the act of 1909. That act, which was an amendment of chapter 126 of the Laws of 1903, is the latest legislation restricting the issuance of bonds by cities of the class named. It is general in its terms and includes all bonded indebtedness of a city, of every kind, with the exceptions expressly named in it; to wit, bonds issued for special improvements and sewers. Bonds for waterworks and electric-light plants are not within the exception and must be considered as a part of the bonded debt of the city, unless they are taken out by the provision in section 16 of the act of 1908 already quoted. That provision relates to the issuance of bonds under the authority of the act of which it is a part. Nothing in its terms indicates a legislative purpose to remove the restrictions and limitations respecting the amount of city indebtedness when bonds were issued under other acts and for different purposes. It simply provides that the issuance of bonds under that act should not be limited in amount by the existing restrictions and limitations. The legislature expressly says that none of such restrictions and limitations "shall apply to or in any way affect the *issuance* of the bonds authorized by this act." Bonds issued under other acts are not within the scope or meaning of this provision. For its own reasons the legislature said that cities of the class mentioned might issue bonds for the acquisition and maintenance of waterworks, without regard to restrictions and limitations, but it did not attempt to fix a limitation on the issuance of bonds under other statutes nor to prescribe what should be regarded as the bonded indebtedness of a city under general limitations as to the issuance of bonds under other statutes.

A like provision in an act authorizing the refunding of county bonds was up for consideration in *The State, ex rel., v. Wyandotte County,* ante, p. 430, 166 Pac. 520, where the

county was making the contention that is made here, and it was said:

"The contention of the county in respect to the refunding bonds is not sound. The provision quoted merely applies to the *issuance* of the refunding bonds themselves. That is to say, they may be issued no matter what the bonded indebtedness of the county may be, and very properly so, because they are merely exchanged for former bonds or evidences of the same indebtedness. But after being issued they are to be counted in determining the limit of the county's actual bonded indebtedness." (p. 432.)

The contention that the waterworks bonds should not be regarded as an indebtedness of the city can not be sustained. It is based on the theory that as water is sold to private consumers and any profit derived from that source is to be devoted to the payment of the bonds they should not be regarded as debts of the city. The act gives the mayor and council the authority to establish water rates to be paid by consumers and to provide a superintendent and such other officers and employees as are necessary to the operation of the plant, as well as for their compensation. It further provides that the revenue derived from the plant shall be used to pay salaries and wages of officers and employees, interest on bonds, and also to pay for necessary betterments, and the surplus remaining shall be set aside as a sinking fund for the redemption of the bonds. (Laws 1908, ch. 33, §§ 10, 11.) If there are profits derived from the operation of the plant they are to go towards the payment of the bonds, but the legislature treated that result as problematical, and required the city to provide for the payment of the bonds by general taxation. The mayor and council are required to levy and collect taxes sufficient to pay the interest on the bonds and to provide a sinking fund for their redemption. (§ 12.) The bonds are ordinary negotiable obligations payable by the city, and the holders of them look to the city for their payment and not to consumers of water who may contribute something toward the payment of the bonds. Such obligations are not like special-improvement bonds which are ultimately paid by the abutting property owners, and even as to those, the legislature proceeded on the theory that they come within the term *bonded indebtedness,* and to exclude them it was necessary to make an express exception of them. As the law stands, the waterworks

bonds must be regarded as a part of the bonded indebtedness of the city, and as the existing debt is already in excess of the limit prescribed in the act of 1909, the city is without authority to issue bonds to build an addition to the city hall.

The judgment of the trial court is therefore reversed and the cause remanded with directions to enter judgment in accordance with the prayer of plaintiff's petition.